Juan Hong (CA SBN 234046)
Law Office of Juan Hong, A Law Corp.
4199 Campus Drive, Suite 550
Irvine, CA 92612
Phone: (949)509-6505
Fax: (949) 335-6647
Email: jhong48@gmail.com

Attorney for Plaintiff Hung Nguyen

United States District Court
For the Central District of California
Southern Division

| | |
|---|---|
| HUNG NGUYEN | Case No. |
| Plaintiff, | **(1) Discrimination on the Basis of Sexual Orientation in Violation of 20 U.S.C. §1681 (Title IX)** |
| vs. | **(2) Retaliation on the Basis of Sexual Orientation in Violation of 20 U.S.C. §1681 (Title IX)** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; FARYAR JABBARI, in his individual capacity; GREGORY WASHINGTON, in his individual capacity; DIANE K. O'DOWD, in her individual capacity; ENRIQUE J. LAVERNIA, in his individual capacity; Does 1 through 10. | **(3) Violation of Equal Protection by 42 U.S.C. §1983; Discrimination and Retaliation** |
| | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, Dr. HUNG NGUYEN ("NGUYEN"), by and through his counsel,
claims and alleges as follows:

1.    NGUYEN brings this action against Defendants THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA ("REGENTS"); FARYAR JABBARI
("JABBARI"), in his individual capacity; GREGORY WASHINGTON
("WASHINGTON"), in his individual capacity; DIANE K. O'DOWD
("O'DOWD"), in her individual capacity; ENRIQUE J. LAVERNIA

-1-
COMPLAINT

("LAVERNIA"), in his individual capacity, for compensatory and consequential damages, punitive damages, mental distress, injunctive relief, an award of cost and attorney's fees, prejudgment interest, and other appropriate relief to remedy Defendants' unlawful employment discrimination on the basis of sex; and retaliation for reporting the complaint.

2.     Plaintiff NGUYEN has been subjected to discriminatory treatment and retaliatory action based on his sexual orientation.

3.     In August 2009, NGUYEN was employed by the University of California Irvine as an assistant professor.  Throughout NGUYEN's employment, he did his duties diligently and responsibly.  However, instead of recognizing NGUYEN's service and qualification, Defendants subjected NGUYEN to sex discrimination. To make matters worse, Defendants retaliated against NGUYEN for complaining the mischaracterization of NGUYEN's work by JABBARI and WASHINGTON, which was motivated by their antigay animus, eventually led to a decision of the termination of NGUYEN's employment in August 2017.

4.     The University of California has a clearly established policy that: "Discrimination, including harassment, against University employees on political grounds, or for reasons of race, color, religion, sex, ***sexual orientation***, gender, gender expression, gender identity, ethnic origin, national origin, ancestry, marital status, pregnancy, physical or mental disability, medical condition (cancer-related or genetic characteristics), genetic information (including family medical history), or service in the uniformed services as defined by the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), as well as state military and naval service, or, within the limits imposed by law or University regulations, because of age or citizenship or for other arbitrary or personal reasons." (Bold italics added.)

**JURISDICTION**

5.      Jurisdiction is conferred upon this court by 42 U.S.C. §§1983 and 1988, and 20 U.S.C. § 1681(a) ("Title IX"), the provisions of 28 U.S.C. §§ 1331, 1343(1)(2)(3) and (4), and 2201, 2202, et seq.  Equitable and other relief is sought under 42 U.S.C. §1983.

6.      Plaintiff NGUYEN at all times relevant herein was and is a resident of the County of Orange, State of California.

**PARTIES**

7.      Plaintiff NGUYEN was and is a public employee employed by the University of California Irvine ("the University").  NGUYEN is openly gay.

8.      REGENTS represent a political subdivision of the State of California. (California Gov. Code 12652.5)   The corporation known as the Regents of the University of California is the highest administrative authority of the University of California, and has general rule-making or policy-making power in regard to the University, and is fully empowered to operate, control, and administer the University. (Cal. Const., Article IX, section 9)

9.      Defendants FARYAR JABBARI ("JABBARI"), GREGORY WASHINGTON ("WASHINGTON"), and ENRIQUE J. LAVERNIA ("LAVERNIA") discriminated and retaliated against NGUYEN and participated in terminating NGUYEN because of his sexual orientation.   On information and belief, Defendant JABBARI was born in Iran.

10.      Defendant JABBARI is an administrator of the University and was acting in the course and scope of his employment as the Associate Dean of the Henry Samueli School of Engineering ("the School") of the University when he discriminated and retaliated against plaintiff.  At all times relevant herein, he was Associate Dean of the School.  Defendant JABBARI at all times relevant herein

was and is a resident of the County of Orange, State of California.  JABBARI knew that Plaintiff NGUYEN is gay.

11.     Defendant WASHINGTON is an administrator of the University and was acting in the course and scope of his employment as the Dean of the Henry Samueli School of Engineering ("the School") of the University when he discriminated and retaliated against plaintiff.  At all times relevant herein, he was the Dean of the School.  Defendant WASHINGTON at all times relevant herein was and is a resident of the County of Orange, State of California.  WASHINGTON knew that Plaintiff NGUYEN is gay.

12.     Defendant O'DOWD is an administrator of the University and was acting in the course and scope of her employment as Vice Provost for Academic Personnel of the University when she discriminated and retaliated against NGUYEN.  At all times relevant herein, she was Vice Provost for Academic Personnel.  On information and belief, Defendant O'DOWD at all times relevant herein was and is a resident of the County of Orange, State of California.  On information and belief, she knew that Plaintiff NGUYEN is gay.

13.     Defendant LAVERNIA is an administrator of the University and was acting in the course and scope of his employment as Provost and Executive Vice Chancellor of the University when he discriminated and retaliated against plaintiff. At all times relevant herein, he was and is a professor in the Department of Chemical Engineering and Materials Science of the School of Engineering. Defendant LAVERNIA at all times relevant herein was and is a resident of the County of Orange, State of California.  LAVERNIA knew that Plaintiff NGUYEN is gay.

14.     Defendant Regents of the University of California ("REGENTS") operates and governs the University of California ("the University"), a public state university.

15.     The University receives federal financial assistance and is therefore subject to the dictates of Title IX.

16.     The true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants Does 1 through 10, inclusive, are unknown to the plaintiff which therefore sue said defendants by such fictitious names.  The plaintiff will seek leave of court to amend this complaint to allege their true names and capacities when the same are ascertained.  On information and belief, at all relevant times each of the defendants, including Doe defendants, was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary, and/or partner or one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## STATEMENT OF FACTS

**<u>Summary of the University Decision</u>**

17.     In July 2009, Dr. NGUYEN was hired as an Assistant Professor in the University's Department of Chemical Engineering and Materials Science ("the Department").  The normal period of service at the rank of assistant professor is six years. (The maximum allowable period of service may not exceed eight years under the Eight Year Rule. Academic Personnel Manual 133.)

18.     A Handbook of Advice for Tenure-Track and Tenured Faculty, Advancement and Promotion at Irvine, 2008, states that: "There are five levels of faculty peers and faculty administrators who will review a case for promotion to tenure, in the following order: (1) Department, (2) Department Chair, (3) Dean, (4) The Council on Academic Personnel (CAP) and an optional campus Ad Hoc

Review Committee, (5) The Executive Vice Chancellor and Provost, and the Chancellor."

19.     In April 2016, the Department's faculty conducted the promotion and tenure reviews of NGUYEN and voted to recommend him for promotion and tenure.  The review was conducted by seventeen (17) faculty members of the Department of Chemical Engineering and Materials Science.   Sixteen (16) professors approved NGUYEN's promotion to Associate Professor.  One professor abstained.  The procedure for the department's review sets forth the various factors to be considered: teaching, research and scholarship, and service.  In discussing research, the department wrote in its April 7, 2016 letter to Chancellor Howard Gillman that "Professor Nguyen has demonstrated high-quality research contributions in his field, dedicated teaching, and excellent service….   This important work has been published in high-quality journals.  He has secured large grants, including a prestigious National Science Foundation CAREER award ($508k).  … He is Co-Investigator of a significant and highly competitive $800k grant from the Department of Energy (with $422k as his portion).  He has also received three large awards of computational resources from national centers …"

20.     In June 2016, NGUYEN reported new funding from the National Science Foundation as co-PI (with $150k as his portion).  The total "funding as an independent scientist" is significantly large in the amount of $1,080k.  On the contrary, Provost & Executive Vice Chancellor, Enrique J. Lavernia, wrote in his August 2, 2016 letter that "The weaknesses of the case include ***a low overall productivity and funding*** as an independent scientist and concern regarding the impact of his scholarly work." (Bold italic added.)

21.     Following the Department faculty's review and vote, on April 27, 2016, the Department Chair wrote a concurring letter to Chancellor Howard Gillman stating that "I strongly endorse the departmental recommendation in support of the promotion of Professor Hung Nguyen from Assistant Prof., Step III (OS) to

Associate Professor, Step 1 with Tenure….. Eight of the nine external reviewers advocate in favor of Prof. Nguyen's promotion."

22.     The Department forwarded its recommendation, along with the Department Chair's concurrence, to the School of Engineering ("the School") Academic Personnel Advisory Committee (APAC).  The Associate Dean, Faryar Jabbari, wrote a letter on May 11, 2016, to the Dean of School of Engineering, Gregory Washington, stating that "The record from UCI Program, which is nearing the end of its seventh year is not substantial.  Strong and credible referees have raised substantial questions regarding innovation, novelty and rigor of the main thrust of the program.  The confidence and enthusiasm needed for a positive tenure recommendation are lacking.  The NSF award, while positive, cannot be determinative for this most important decision a university makes."  The letter ended with a statement that "The vote was 4 for non-reappointment and no votes for tenure.  This report was approved by all participating voting members."  The Associate Dean was not a voting member.  There were no signatures of the four (4) voting members.  This is a violation of APM 210 e. (2) providing that "The reviews committee has the responsibility of making an unequivocal recommendation.  No member should subscribe to the report if it does not represent that member's judgment."  On May 11, 2016, letter by the Associate Dean, no member subscribed to the letter to the Dean.

23.     The Associate Dean, Faryar Jabbari, wrote the letter that is self-refuting. The letter of May 11, 2016, states that "The NSF award, while positive, cannot be determinative for this most important decision a university makes."  The Associate Dean's December 1, 2015, letter to Provost & Executive Vice Chancellor self-contradicted by comparing NGUYEN's case to two previous cases from the Department of Chemical Engineering and Materials Science that "In one case, the department strongly recommended one-year extension due to the institutional failure to provide laboratory space and equipment to an experimental program for

over a year.  That case was much stronger (15 journal papers, 8 while at UCI, CAREER, etc.).  In the second case, after 5 years, there were 18 papers while at UCI with 9 papers from new and independent projects, and success in grants (including CAREER)."  NGUYEN had 19 journal papers, 10 while at UCI, and NSF CAREER award.  The fact that the Associate Dean gave different reasons at different times for his decision supports a finding that the reason he ultimately settled on was fabricated.

24.     On October 26, 2015, NGUYEN wrote a letter to Diane K. O'Dowd, Vice Provost for Academic Personnel, reporting Faryar Jabbari's mischaracterization in his May 14, 2015 APAC letter to the Dean, Gregory Washington, of his prior work (i.e., research conducted prior to arriving at UCI) as "modest output with modest impact."  The four APAC members were Soroosh Sorooshian, Enrico Gratton, Roger Rangel and Hamid Jafarkhan.  On information and belief, two members of the four APAC members were born in Iran.  Faryar Jabbari was also born in Iran.  The APAC letter, written by Faryar Jabbari, reflected three Iranian born members' opinion.  On information and belief, they all knew Plaintiff NGUYEN is gay.

25.     In the NGUYEN letter to O'DOWD, Vice Provost for Academic Personnel, NGUYEN inferred potential antigay animus of the Associate Dean, JABBARI, by stating that "The fact that the prior work was the focus of my tenure review is strange enough, but that it was characterized as "*modest*" ignores the quantitative citation evidence and positive evaluations in multiple published reviews by the scientific community.  Given the enormous disparity between how my work was characterized and my actual achievements, ***I have to wonder what motivates such statements, which seem to suggest something else other than an objective evaluation***."  (Bold italics underline is added for emphasis.)  O'DOWD did not inquire or investigate the NGUYEN's allegation on the motives of JABBARI and WASHINGTON.

26.     The entire thirteen (13) tenured faculty in the Department of Chemical Engineering and Materials Science compared NGUYEN's case with five recent successful tenure cases from the department.  They concluded that "Examination of five recent successful tenure cases from the department show that Prof. Nguyen's accomplishments fall well within the ranges for number of peer-reviewed publications, graduated doctoral students, and amount of extramural research funding awarded to the candidate.  His accomplishments are not near the lower end of the spectrum."  None of the five successful applicants were gay or lesbian.

27.     On May 12, 2016, the Dean of the School, Gregory Washington, and the Associate Dean, Faryar Jabbari, wrote a letter to Provost & Executive Vice Chancellor, Enrique J. Lavernia, stating that "Given the totality of the case, and the recommendation of our APAC colleagues, the file does not engender the confidence that a positive recommendation requires.  Our recommendation is for no reappointment."   The letter was signed by both the Dean and the Associate Dean.  The Associate Dean, Faryar Jabbari, as administrator, signed the two letters, the May 11, 2016 letter from APAC to the Dean, and the May 12, 2016, letter from the Dean, WASHINGTON, to LAVERNIA, Provost and Executive Vice Chancellor.  The two letters were included in the NGUYEN's dossier and reviewed by the Council on Academic Personnel and Provost & Executive Vice Chancellor.  It is apparent that undue influence by the Associate Dean, an administrator, infected a higher level administrator's review of the NGUYEN's tenure and promotion.  The inclusion of the two letters by administrators was in violation of the general principle of shared governance.  APM 015 Part I – Professional Rights of Faculty provides that "In support of the University's central functions as an institution of higher learning, a major responsibility of the administration is to protect and encourage the faculty in its teaching, learning, research, and public service."  APM 015 Part I 5. states the faculty participation in the governance of

the University, as provided in the Bylaws and Standing Orders of The Regents and the regulations of the University, include (c) appointment and promotion of faculty.  The Associate Dean, an administrator, violated the professional rights of faculty in the shared governance for NGUYEN's promotion and tenure application.

28.     At the University level, the 9-person University Council on Academic Personnel (CAP) considered NGUYEN's application.  The Council voted six to three to recommends a Promotion to Tenure to Associate Professor, Step I, Irvine scale.  The CAP letter of June 20, 2016, states that "Professor Nguyen's research makes an important contribution to modeling and simulation for the study of self-assembly in biomolecules.  He has published a number of conference proceedings and peer-reviewed articles of which he was the senior author.  He has recently received a prestigious NSF CAREER award, which adds to additional research funding where he is a co-PI, including funding from DOE. His professional activities are on a rising trajectory with active participation in conferences as co-organizer and session chair.  His university service and teaching are at the expected level.  Finally, he has been a successful mentor of doctoral students, having graduated two students, whom he advised."

29.     On August 2, 2016, Provost and Executive Vice Chancellor, Enrique J. Lavernia, wrote a letter to Chancellor Howard Gillman recommending for "non-reappointment of Professor Hung Duc Nguyen, effective July 1, 2015."  He stated that "The weaknesses of the case include a low overall productivity and funding as an independent scientist and concern regarding the impact of his scholarly work. In my judgment, the weaknesses of the case outweigh the strengths."  This statement is in substance the same as that in the Dean's letter signed by the Associate Dean JABBARI and the Dean WASHINGTON.

30.     Provost and Executive Vice Chancellor disagreed with the recommendations by the two academic senate committees, namely, the Faculty of the Department of

Chemical Engineering and Materials Science, and the University Council of Academic Personnel.  He agreed with the Dean, an administrator.

31.     Provost and Executive Vice Chancellor's disagreement was heavily based upon the two negative letters by the Associate Dean, Faryar Jabbari.  His letters were included in the NGUYEN's dossier in violation of the Academic Personnel Manual (APM).

32.     If the Executive Vice Chancellor & Provost agree with CAP's recommendation, the file is forwarded to the Chancellor for the final decision.  If the Executive Vice Chancellor and Provost disagrees with CAP's recommendation, it may be sent back to CAP for reconsideration.  In advising the Chancellor, the Executive Vice Chancellor and Provost can reject the advice of the Council on Academic Personnel, although CAP's recommendation is most often upheld.  Thus, the tenure decision is typically a faculty-derived decision rather than an administrative one.  Final decision-making power resides with the Chancellor.  For the NGUYEN's case, the Executive Vice Chancellor and Provost disagreed with the CAP's positive recommendation.  However, he did not send back to CAP for reconsideration.

33.     The Chancellor retains authority for decisions on promotion to associate professor and full professor, in addition, to the non-reappointment of assistant professors.  Decisions on all other academic personnel actions have been delegated to the Executive Vice Chancellor and Provost, the Vice Provost, or to the deans.  In the University's letter announcing its final decision, NGUYEN was further informed that, NGUYEN was terminating his appointment on August 31 2017.

34.     The Provost and Executive Vice Chancellor's letter of August 2, 2016, never mentioned the additional information submitted by the Department Chair to Chancellor Howard Gillman on June 20, 2016.  The additional information included the acceptance of nineteenth manuscript, four submitted manuscripts

under review (which was published later), and new funding from the NSF Division of Materials Research as co-PI.  NGUYEN's portion is $150k.

35.     On November 22, 2016, the thirteen (13) tenured faculty in the Department of Chemical Engineering and Materials Science requested Provost and Executive Vice Chancellor, Enrique J. Lavernia, "for reconsideration in the tenure decision for Professor Hung Nguyen."  The letter of request compared NGUYEN's case with five recent successful tenure cases from the department.  The letter states that:

> "**Productivity and Impact of Scholarly Activities**: While each tenure case is different, the totality of Prof. Nguyen's achievements is consistent with other faculty members in the department who have been promoted to tenure over the last few years. Examination of five recent successful tenure cases from the department show that Prof. Nguyen's accomplishments fall well within the ranges for number of peer-reviewed publications, graduated doctoral students, and amount of extramural research funding awarded to the candidate.  His accomplishments are not near the lower end of the spectrum.  The department is well aware that tenure is not awarded by bean counting; the evidence of his strong scholarly contributions is also reflected in quantitative, analytical evaluation of his scholarly achievements in external review letters.  He received positive endorsements for tenure from all but one of the nine external reviewers.  Prof. Nguyen took a high-risk approach by investing significant time in developing a novel, complex, multi-scale computational framework with associated methodologies.  This investment led to an absence of publications in the earliest years of his faculty position.  However, once developed and thoroughly tested, these novel methods enabled him to tackle important challenging

problems in nanobiotechnology reported in a series of strong publications in high quality journals. ***Thus the basis for defining his research productivity, impact, and research funding as low is lacking***." (Bold italics added.)

36.    On December 8, 2016, Provost & Executive Vice Chancellor informed the Department, in substance, of his denial of reconsideration.  He stuck to his opinion in his August 2, 2016, letter to Chancellor Howard Gillman recommending for "non-reappointment of Professor Hung Duc Nguyen, effective July 1, 2015…….  The weaknesses of the case ***include a low overall productivity and funding*** as an independent scientist and concern regarding the impact of his scholarly work.  In my judgment, the weaknesses of the case outweigh the strengths."  (Bold italics added.)

**Privilege and Tenure Committee's Perfunctory Investigation and Arbitrary Decision**

37.    On September 22, 2016, NGUYEN submitted a grievance alleging that his rights and privileges were violated in the tenure review process.  NGUYEN alleged:

"(1) Associate Dean Jabbari was present during the APAC meeting on May 9 of 2016 and wrote a report to Dean Washington on behalf of APAC on May 11 of 2016.  Then Associate Dean Jabbari also cowrote and co-signed the Dean's letter to Provost & EVC Lavernia on May 12 of 2016.  This clearly demonstrates that APAC is not an independent review body and that there is no separation between APAC and Dean Washington.

-13-
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(2) At CAP's meetings, the representative from the School of Engineering participates in all discussions related to personnel cases of engineering faculty from any department; it means that the school of engineering representative can discuss cases from his/her own department.  In contrast, in APAC's meetings, the representative from an engineering department is not allowed to participate in the discussion of any personnel case from his/her department. Indeed, during the APAC meeting on May 9 of 2016, Professor Farghalli Mohamed, the representative from the department of Chemical Engineering and Materials Science, was excluded from attending and participating in the discussion of Nguyen's case.  This practice prevents the representative from providing additional information or explanation (without being an advocate) and monitoring the discussion in a fair manner.

(3) The file materials made available to Nguyen by AP indicate that when his personnel case was resubmitted by the department on April 27 of 2016, new assessment from an ad hoc review committee was neither requested nor performed on Nguyen's case.  Assessment by this committee is essential in view of the conflicting disagreements on Nguyen's stature, impact and research accomplishments between the department and the Dean's office.  It should be mentioned that assessment by an ad hoc review committee had previously been requested on July 23, 2015 when the case was originally submitted. However, when the case was resubmitted with significant materials and new information (receipt of an NSF CAREER award, new NSF grant, evidences of increased research productivity and graduation of

-14-
COMPLAINT

two Ph.D. students) on April 27 of 2016, surprisingly neither the same
ad hoc committee nor a new ad hoc committee was called in action to
re-evaluate the updated case. According to the CAP Chair Redmiles
on December 17 of 2015 and Vice Provost O'Dowd on January 25 of
2016, the updated case after July 1 of 2015 requires a fresh
assessment from all levels."

38.    On November 17, 2016, Greg Evans, Chair of Committee on Privilege and
Tenure wrote a letter stating that:

"Dear Professor Nguyen, I am writing in my capacity as chair of the
Committee on Privilege and Tenure (CPT).  The Committee met
recently to review the grievance you submitted on September 22,
2016 alleging that your rights and privileges were violated in the
tenure review process.  CPT reviewed your grievance and determined
that there is not sufficient reason to believe that your rights and
privileges have been violated.  As a result CPT has decided that your
case does not meet the prima facie standard as defined by Bylaw
335.B.2 and therefore does not warrant a formal evidentiary hearing."

39.    On November 22, 2016, the thirteen (13) tenured faculty of the Department
of Chemical Engineering and Materials Science submitted a letter to the Dean,
Gregory Washington, entitled "concern with review process for promotion cases in
the Henry Samueli School of Engineering."  Their concerns were consistent with
the September 22, 2016, NGUYEN's grievance filed with the Committee on
Privilege and Tenure.  The Dean asserted strongly his policy on the Academic
Personnel Advisory Committee (APAC) that was established by himself in
October 2011.  He mistook his local policy with the university policies adopted in
the University of California Academic Personnel Manual (APM).  He must realize
that the inclusion of two letters by Associate Dean and the Dean gives extra weight

to the school-level review by the two administrators in violation of the shared governance policy of the University (APM 015 Part I 5).

40.     Any member of the Academic Senate may grieve to the Divisional Privilege and Tenure Committee (hereafter, the Committee) that the member's rights or privileges have been violated.  In cases of personnel reviews involving tenure, promotion, or reappointment, complaints may be based only on allegations that: proper procedures were not followed, and/or the challenged decision was reached on the basis of impermissible criteria, such as race, sex, or political conviction. (Academic Senate Bylaw 335 A. 1. and 2.)  On September 22, 2016, NGUYEN filed a grievance with the Committee.

41.     Bylaw 335 B. 4. provides that: "If the committee determines either that the grievant has not made out a prima facie case or that after a preliminary review, there is not sufficient reason to believe that the grievant's rights and privileges may have been violated, it ***shall*** advise the grievant to that effect in a written communication stating the reasons for its conclusion." (Bold italic is added.)  The Committee failed to discharge its mandatory duty under Bylaw 335 B. 4.  The Committee's decision letter did not include reasoned explanation of the Committee's decision.  There were no findings and no analysis to justify the decision made.  The Committee must have stated the reasons for its determination and indicate the evidence relied on.

42.     The Committee's perfunctory and arbitrary investigation and decision on the NGUYEN's grievance report constructively deprived NGUYEN of the dignitary interest guaranteed by the California Constitution, art. I, §7.

43.     California Government Code §815.6 provides in pertinent part: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty

-16-
COMPLAINT

unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

44.     The Committee failed to discharge its mandatory duty under Bylaw 335 B. 4 and California Government Code 11425.50.

45.     The University of California Irvine Academic Personnel Procedure APP 3-60 describes the components of a merit, promotion, mid-career appraisal, or tenure review file, including the base file, confidential outside letters, and recommendations from the department, chair, and dean.

46.     APP 3-60 H.2. states that "The dean's letter should be an independent assessment of the case.  In addition, the dean should sign and date the Academic Personnel Action Summary form after summarizing his/her opinion as it relates to the department recommendation: Yes, No, or Modify/Other Recommendation."

47.     The components of tenure review file are information and evaluation in the following areas: (1) Teaching, (2) Research and Creative Work, (3) Professional Competence and Activity, and (4) University and Public Service.

48.     External letters are solicited in considering the promotion with tenure to Associate Professor to evaluate the faculty member's research performance during his/her entire service as Assistant Professor.   External reviewers are asked to comment on "evidence of a productive and creative mind and that the candidate is continuously and effectively engaged in creative activity of high quality and significance."  With respect to professional competence and activity, "the candidate's professional activities should be scrutinized for evidence of achievement and leadership in the field and of demonstrated progressiveness in the development or utilization of new approaches and techniques for the solution of professional problems." (Academic Personnel Manual APM 210-1-d-(2-3).)

**The University's Decision Is Unreasonable, Arbitrary, Capricious, and Lacking in Evidentiary Support**

49.   The Provost denied NGUYEN promotion and tenure, notwithstanding the fact NGUYEN's records showed he overwhelmingly met all approved criteria.

50.   The University further denied NGUYEN promotion and tenure based on the recommendations of two administrators, the Associate Dean and the Dean of the School of Engineering, not those of the Academic Senate Committees and the Department Faculty.  The Associate Dean is not authorized to write letters to be filed in NGUYEN's dossier.  However, his two letters were included in the dossier and exerted undue influence to infect upper administrators' decision.

51.   The University of California acted arbitrarily or capriciously because its decision to deny NGUYEN's application for tenure and promotion is overtly and patently in violation of the rules and requirements of the University and is unreasonable and without foundation in fact.

52.   The University's decision was unreasonable, arbitrary, or capricious because Executive Vice Chancellor's decision was not supported by substantial competent evidence because he primarily relied on the Associate Dean and Dean's recommendation to deny Nguyen's application for tenure and promotion.

## STATEMENTS OF THE LAW

53.   Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex… . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action for which money damages are available.

54.   Sexual orientation discrimination is not a category distinct from sex or gender discrimination. (*Videckis v Pepperdine University*, 150 F.Supp.3d 1151 (Central District of California, 2015))

55.   Discrimination on the basis of sex is defined as treating someone differently simply because that person's sex is different from a similarly situated person.

56.     NGUYEN asserts one claim under 42 U.S.C. §1983 against Defendants JABBARI, WASHINGTON, O'DOWD, and LAVERNIA, in their individual capacity, for violation of the Equal Protection Clause of the Fourteenth Amendment.

57.     The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws."  Denials of equal protection by any other person acting under color of state law are actionable under 42 U.S.C. §1983.  Sex discrimination by a state actor can constitute a violation of the equal protection clause.  Defendants' conduct violated established constitutional rights of which a reasonable person in their positions would have known.

58.     The University of California has a clearly established policy that: "Discrimination, including harassment, against University employees on political grounds, or for reasons of race, color, religion, sex, ***sexual orientation***, gender, gender expression, gender identity, ethnic origin, national origin, ancestry, marital status, pregnancy, physical or mental disability, medical condition (cancer-related or genetic characteristics), genetic information (including family medical history), or service in the uniformed services as defined by the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), as well as state military and naval service, or, within the limits imposed by law or University regulations, because of age or citizenship or for other arbitrary or personal reasons." (Bold italics added.)  The contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right.  In light of the pre-existing law the unlawfulness of the individual Defendants' conducts must be apparent.

## FIRST CAUSE OF ACTION

## Discrimination on the Basis of Sexual Orientation in Violation of 20 U.S.C. §1681 (Title IX) against Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("REGENTS")

59.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs 1 through 58 of the complaint as if fully set forth herein.

60.     The acts, and failure to act, perpetrated against Plaintiff NGUYEN amounted to unlawful discrimination on the basis of sex.  One or more administrators or officials of the University, with authority to take corrective action on Plaintiff's behalf, had actual notice of said discrimination and failed to adequately to respond, in violation of its own policies.  Those failures amounted to deliberate indifference toward the unlawful discrimination that had occurred, was occurring.

61.     Defendant REGENTS acted with deliberate indifference in deviating significantly from the standard of care outline by the University polices in the University of Academic Personnel Manual.

62.     As a direct and proximate result of the above-stated actions by Defendant REGENTS, Plaintiff was injured in that he suffered depravation of his Constitutional rights, personal dignity, dishonor, humiliation, damages to his professional and personal reputation, mental anguish and distress, false accusation of poor performance, and unlawful discharge.

63.     As a direct and proximate result of REGENTS' conduct, plaintiff suffered the following injuries and damages:

(a).    Plaintiff was denied tenure and promotion to Associate Professor, resulting in lost pay and benefits including pension or retirement benefits.

(b).    Plaintiff was discharged from employment with the University.

(c).   Plaintiff has suffered and continues to suffer substantial humiliation, serious mental anguish and emotional distress

## SECOND CAUSE OF ACTION

**Retaliation on the Basis of Sexual Orientation in Violation of 20 U.S.C. §1681 (Title IX) against Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("REGENTS")**

64.   Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the complaint as if fully set forth herein.

65.  The acts, and failure to act, perpetrated against Plaintiff NGUYEN amounted to unlawful retaliation for reporting discrimination on the basis of sex.  One or more administrators or officials of the University, with authority to take corrective action on Plaintiff's behalf, had actual notice of said discrimination and failed to adequately to respond, in violation of its own policies.  Those failures amounted to deliberate indifference toward the unlawful discrimination that had occurred, was occurring.

66.  Defendant REGENTS acted with deliberate indifference in deviating significantly from the standard of care outline by the University polices in the University of Academic Personnel Manual.

67.   As a direct and proximate result of the above-stated actions by Defendant REGENTS, Plaintiff was injured in that he suffered depravation of his Constitutional rights, personal dignity, dishonor, humiliation, damages to his professional and personal reputation, mental anguish and distress, false accusation of poor performance, and unlawful discharge.

68.   As a direct and proximate result of REGENTS' conduct, plaintiff suffered the following injuries and damages:

(a).    Plaintiff was denied tenure and promotion to Associate Professor, resulting in lost pay and benefits including pension or retirement benefits.

(b).    Plaintiff was discharged from employment with the University.

(c).    Plaintiff has suffered and continues to suffer substantial humiliation, serious mental anguish and emotional distress

### THIRD CAUSE OF ACTION (Violation of Equal Protection by 42 U.S.C. §1983; Discrimination and Retaliation) against Defendants JABBARI, WASHINGTON, O'DOWD, LAVERNIA, in their individual capacity

69.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of the complaint as if fully set forth herein.

70.    Plaintiff, as a gay person, was and is a member of a protected class under the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.  The various acts as alleged herein amounted to a violation of this clearly established constitutionally protected rights, of which reasonable persons in the defendants' position should have known.  Defendants JABBARI, WASHINGTON,  O'DOWD, LAVERNIA are liable to Plaintiff NGUYEN, pursuant to federal law 42 U.S.C. §1983.

71.    Defendants JABBARI, WASHINGTON, O'DOWD, LAVERNIA discriminated and retaliated against plaintiff and participated in discharging plaintiff because of his sexual orientation.

72.    All individual defendants discriminated against plaintiff by altering the promotion and tenure process and denying plaintiff's promotion and tenure on the basis of sexual orientation.  All individual defendants each participated in the alleged constitutional deprivation.

73.    All individual defendants had sufficient influence on a personnel decision such that discriminatory animus or bias is imputed to defendant REGENTS.  It is well established that a plaintiff claiming discrimination in the denial of academic tenure need not prove intentional discrimination at every stage of the review process.  It plainly is permissible for a jury to conclude that an evaluation at any level influenced the decision making process and thus allowed discrimination to infect the ultimate decision.

74.    At the time of the denial of plaintiff's application for tenure and promotion defendants JABBARI, WASHINGTON, O'DOWD, LAVERNIA were acting under color of the laws and regulations of the State of California and the University of California.

75.    As a direct and proximate result of the above-stated actions by Defendants JABBARI, WASHINGTON, O'DOWD, and LAVERNIA, Plaintiff was injured in that he suffered depravation of his Constitutional rights, personal dignity, dishonor, humiliation, damages to his professional and personal reputation, mental anguish and distress, false accusation of poor performance, and unlawful discharge.

76.    As a direct and proximate result of Defendants' conduct, plaintiff suffered the following injuries and damages:

(a).    Plaintiff was denied tenure and promotion to Associate Professor, resulting in lost pay and benefits including pension or retirement benefits.

(b).    Plaintiff was discharged from employment with the University.

(c).    Plaintiff has suffered and continues to suffer substantial humiliation, serious mental anguish and emotional distress

## THE REQUESTED RELIEF

WHEREFORE, plaintiff prays judgment against defendants as follows:

1.     For a declaratory judgment that Defendants JABBARI, WASHINGTON, O'DOWD and LAVERNIA's discrimination and retaliatory employment actions taken against plaintiff were unlawful and abridged the rights under the Equal Protection under 42 U.S.C. §1983.

2.     For a declaratory judgment that Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA's discrimination and retaliatory employment actions taken against plaintiff were unlawful under Title IX, 20 U.S.C. § 1681(a).

3.     For a declaratory judgment that the Defendants JABBARI, WASHINGTON, O'DOWD and LAVERNIA's discrimination and retaliatory employment actions taken against plaintiff were with malicious intent and the defendants are individually liable for damages.

4.     For injunctive relief clearing employment record, and directing the regents to remove all false and stigmatizing statements, and false discharge, from plaintiff's files.  For a prospective injunctive relief, reinstatement.

5.     For compensatory damages.  The defendants are jointly and severally liable for the compensatory damages.

6.     For mental distress against Defendants REGENTS, JABBARI, WASHINGTON, O'DOWD and LAVERNIA.

7.     For punitive damages against Defendants JABBARI, WASHINGTON, O'DOWD and LAVERNIA.

8.     For costs and attorney's fees pursuant to 42 U.S.C. §1988, and 20 U.S.C. § 1681.

9.     For prejudgment interest on lost wages and benefits.

10.    For post judgment interest on all sums, including attorney fees.

11.    For all other relief the court deems appropriate.

//

//

//

**DEMAND FOR JURY TRIAL**

Plaintiff HUNG NGUYEN hereby demands a jury trial.

Dated: March 10, 2017                    Respectfully submitted,


                                         By:_____
                                         Juan Hong
                                         Attorney for Plaintiff HUNG NGUYEN
                                         Law Office of Juan Hong, A Law Corp.
                                         4199 Campus Drive, Suite 550
                                         Irvine, CA 92612
                                         Phone: (949)509-6505
                                         Fax: (949) 335-6647
                                         Email: jhong48@gmail.com